Argued July 28, decided August 25, rehearing denied October 6, 1908.

## SCOTT *v.* FORD.

### [97 Pac. 99.]

PAYMENT—RECOVERY OF MONEY PAID—MISTAKE OF FACT—MISTAKE OF LAW.

1. Money paid in ignorance of facts, under a mistake as to the truth, is recoverable, while money paid under a mistake of law, with knowledge of the facts, without deceit or undue influence, is not recoverable.

EVIDENCE—JUDICIAL NOTICE—LAWS OF OTHER STATES.

2. The court will not take judicial notice of the statutes of other states.

SAME—PRESUMPTIONS—LAW OF OTHER STATES.

3. In the absence of proof to the contrary, the court will presume that the common law is in force in a sister State.

WILLS—CONSTRUCTION—TIME OF TAKING EFFECT—VESTING OF LEGACY.

4. At common law a will takes effect at the death of testator, unless its language by fair construction indicates otherwise, and a legacy therein does not become vested until that time.

SAME—LAPSED GIFTS.

5. At common law, where a legatee dies before testator, the legacy lapses and falls into the body of the estate, and is not payable to his executor or administrator.

PAYMENT—RECOVERY—MISTAKE OF LAW.

6. Testator, domiciled in a sister state, added a codicil to his will bequeathing the share of a daughter, mentioned therein, to her five children equally; the daughter having died subsequent to the execution of the will. The daughter had six children, one of whom had died before the execution of the will, but had left surviving him an infant child. The executors paid a share to the infant under the belief that she was entitled thereto. *Held* that, in the absence of proof of the law of the sister state, the court must presume that the common law was in force there, and that the infant was not entitled to any share, rendering the payment one made under a mistake of law, and therefore not recoverable.

NEW TRIAL—POWER TO GRANT—STATUTES.

7. Under Section 159, B. & C. Comp., providing that the findings of the court shall be deemed a verdict, and may be set aside in the same manner and for the same reasons, and Section 173, defining a new trial as a re-examination of an issue of fact after a trial and decision, and Section 174, specifying the manner in which a verdict or other decision may be set aside and a new trial granted, and providing that a new trial may be granted "on the motion of the party aggrieved," the court cannot, on its own motion, set aside its filed findings after the filing by a party of a motion for judgment; the court not having been imposed on by fraud or collusion of the parties or otherwise.

STATUTES—CONSTRUCTION.

8. Where a statute limits a thing to be done in a particular form, it includes in itself a negative, and, in effect, provides that the thing shall not be done otherwise.

SAME.

9. The statutes governing the granting of new trials establish a uniform system regulating the power of the courts at common law to set aside verdicts and order new trials, and to be effective they must be exclusive, and the court, in the absence of fraud or collusion between the parties, cannot, on its own motion, set aside its findings and grant a new trial after the filing of a motion for judgment.

PLEADING—AMENDMENTS—DISCRETIONARY POWER.

10. The discretionary power of the court to permit amendments to pleadings does not authorize the court to set aside its findings after the filing of a motion for judgment for the purpose of giving permission to a party to apply to the court for that privilege, especially since Section 102, B. & C. Comp., impliedly inhibits the right to amend after trial.

NEW TRIAL—RIGHT TO GRANT—MOTIONS.

11. A motion by the defeated party to strike out a part of the court's findings does not give the court power to set aside its findings and grant a new trial.

SAME—IMPROPER ALLOWANCE OF NEW TRIAL—WAIVER.

12. Under Section 548, B. & C. Comp., providing that a party to a judgment, other than a judgment given for want of an answer, may appeal, a defendant who answers after the court had erroneously set aside its findings and had granted a new trial and had permitted the filing of an amendment to the complaint, does not abandon his right to insist on a motion for judgment filed prior to the setting aside of the findings, and he may appeal from an adverse judgment, and may insist on his motion for judgment.

From Lane:  JAMES W. HAMILTON,  Judge.

52 OR.—— 10

This is an action by George W. Scott and H. A. Hammond, as executors of the last will and testament and estate of Church Sturtevant, deceased, against Eva Ford. From a judgment in favor of plaintiffs, defendant appeals.

Statement by MR. COMMISSIONER KING.

This is an action for the recovery of money alleged to have been paid by plaintiffs to defendant through mistake, and is here on appeal for the second time. In December, 1888, in the State of Illinois, Church Sturtevant made a will bequeathing a share of his estate to his daughter, Mrs. Stephens, but, she dying since then, he thereafter, in December, 1894, executed a codicil thereto, devising that share to her five children equally. The devisees were not designated by their names, but consisted of Lucy Stephens, Clark Stephens, Church Stephens, Joseph Stephens, and Lilly McCutcheon, all then living, while Hosea Stephens, her son, had died about 10 years before, leaving the defendant, Eva Ford, as his sole survivor and heir. Sturtevant's estate was duly admitted to probate in the county court of Henry County, Illinois, pursuant to which plaintiffs were appointed executors thereof. Thinking that under the terms of the codicil, defendant was entitled to a share in the estate, they paid to her as such supposed heir during the years 1900 and 1901 sums aggregating $1,800, which she accepted, fully believing under the representations made to her by plaintiffs that as a grand-daughter of Mrs. Stephens she was entitled thereto. The error was subsequently discovered, but defendant refused to repay the money, resulting in this action and a judgment for the sum demanded, from which defendant appealed, secured a reversal and a new trial. *Scott* v. *Ford*, 45 Or. 531 (78 Pac. 742: 80 Pac. 899: 68 L. R. A. 469).

At the second trial the cause, by consent of the parties hereto, was tried before the court without a jury; and

on January 4, 1906, during vacation, the court filed its findings and conclusions as follows:

"First. That plaintiffs as executors of the last will and testament of the estate of Church Sturtevant, deceased, paid John B. Jenkins, then guardian of defendant, March 31, 1900, $600, and on March 27, 1901, to defendant personally $599.45, all of which sums of money were before commencement of this action received by defendant.

"Second. That the said payments were so made by plaintiffs to defendant under the belief that, as a child of one Hosea Stephens, said defendant would be entitled to said sums of money under and by the terms and provisions of the codicil to the will of Church Sturtevant, which terms are set forth in the amended complaint of plaintiff.

"Third. That the Mary Jane Stephens referred to in the codicil of said will of Church Sturtevant as Mrs. Stephens, died April 23, 1893.

"Fourth. That the children of said Mary Jane Stephens living at the time of her death and at the time of making the said codicil to said will of Church Sturtevant, and at the time of the death of Church Sturtevant are, Lucy Stephens, Clark Stephens, Church Stephens, Joseph Stephens, and Lilly McCutcheon.

"Fifth. That Hosea Stephens was a child of Mary Jane Stephens. That Hosea died December 13, 1882, leaving surviving him a daughter, who is the defendant herein.

"Sixth. That plaintiff H. A. Hammond, who acted for plaintiffs in paying said money as aforesaid, believed that said Hosea Stephens was alive at the time said codicil to said will was made, and that the said defendant as heir of said Hosea was entitled to receive said moneys so as aforesaid received by her.

"Seventh. That said payments were made by plaintiffs in good faith, and under said belief.

"Eighth. That plaintiffs knew that the death of Hosea Stephens preceded that of the death of Church Sturtevant.

"As conclusions of law based on the foregoing facts, I find as follows:

"First. The said sums of money so paid by plaintiffs to defendants and to her guardian for her were erroneously paid.

"Second. That neither as heir of said Hosea Stephens nor by the terms of said codicil of said will of Church Sturtevant, deceased, was defendant entitled to receive said money so paid to her nor any portion thereof.

"Third. That withholding said moneys from plaintiffs by defendant is wrongful.

"Fourth. That plaintiffs are entitled to recover a judgment against defendant for the sum of seventeen hundred and ninety-nine and 40-100 dollars ($1,799.40), with interest thereon from April 5, 1902, at the rate of 6 per cent per annum, amounting to two thousand two hundred and four and 10-100 dollars ($2,204.10), and plaintiffs' costs herein.

"Dated the fourth day of January, 1906.

"J. W. Hamilton, Judge."

On January 23d, based upon the court's findings, defendant filed a motion for judgment in her favor, but on March 16th the court, on its own motion, set aside its findings and entered an order directing a new trial and giving plaintiffs 10 days' time in which to file an application for leave to file an amended complaint. Pursuant to this permission, plaintiffs asked leave to file a second amended complaint, which was allowed and filed, the amended pleading being in substance the same as the first amended complaint on which the former trial was had, except as to the following additional averments:

"That prior to the execution of said codicil to said will the legislature of the State of Illinois enacted a law in substance as follows, to-wit: That when any estate shall be devised to any child or grandchild of the testator, and such devisee shall die before the testator leaving lineal descendants, such descendants shall take the estate, real and personal, as such devisee would have done in case he had survived the testator. That said act of said legislature was a valid and binding law in the State of Illinois at the time of the execution of said codicil to said will, and ever since said time, and now is, one of the laws of the State of Illinois, and a binding and valid law of said State; and under the laws of the State of Illinois at the time said codicil was executed, and ever since said time, a bequest or devise to a child or grandchild does not lapse in the event that the devisee

or legatee dies before the testator, provided that such legatee or devisee leave lineal descendants. That the defendant, Eva Ford, was and is a lineal descendant of said Hosea Stephens, being a daughter of said Hosea Stephens."

On being placed at issue by an answer, the cause was again, by consent of the parties, tried by the court without a jury, and the same findings entered as at the previous trial, whereupon the defendant moved the court "to set aside its verdict made, rendered, and filed in this cause on the 14th day of June, 1907, and that the defendant herein have judgment upon the verdict of this court made, rendered, and filed herein at the second trial of this cause upon the pleadings and evidence then submitted to this court, it being upon the issues raised by the first amended complaint, answer, and replication made and filed therein, and upon the evidence duly submitted to this court thereunder."

This motion was denied and judgment entered for plaintiffs for the sum of $2,363.99 and costs; hence this appeal.                                                  REVERSED.

For appellant there was a brief over the names of *Mr. Tilmon Ford* and *Mr. William M. Kaiser*, with an oral argument by *Mr. Kaiser*.

For respondents there was a brief over the names of *Mr. Lark Bilyeu* and *Messrs. Woodcock & Potter*, with oral arguments by *Mr. Bilyeu* and *Mr. Edwin O. Potter*.

Opinion by MR. COMMISSIONER KING.

1. The main questions for decision involve the right of the trial court upon its own motion, and after a motion for judgment is filed, to set aside its findings of fact and conclusions of law and grant a new trial, a determination of which becomes necessary only in the event that defendant has been prejudiced, making it important first to ascertain whether, if the course pursued by the court had not been adopted, defendant's

motion should have been allowed. The proceedings were instituted to recover funds erroneously paid to defendant, and plaintiffs' right of recovery depended upon whether the moneys were paid to her through a mistake of law or a mistake of fact. This question is clearly and fully determined in an able opinion by Mr. Justice WOLVERTON on the former appeal herein; and the conclusion there reached was to the effect that money honestly paid in ignorance or forgetfulness of facts under a clearly proved mistake as to the truth may be recovered, but not if the mistake is one of law with knowledge of all the facts and without deceit or undue influence.

2. As the case stood at the time the new trial was ordered the Illinois statute had not been pleaded, in the absence of which it became necessary for the court to presume that the common law relative to the disposition of estates was in force and governed the distribution thereof in that State. *Cressey* v. *Tatom,* 9 Or. 541; *Goodwin* v. *Morris,* 9 Or. 322. These authorities disclose it to have been the settled rule in this State, that the court will not take judicial knowledge of the statutes of other states or territories.

3. And unless something appears in the record to the contrary, we must presume that the common-law rule prevails there.

4. Under the common law the will took effect at the death of the testator, unless its language, by a fair construction, indicates otherwise, and the legacy or bequest provided therein did not become vested until that time. *Gerrish* v. *Hinman,* 8 Or. 348; *Morse* v. *Macrum,* 22 Or. 229 (29 Pac. 615: 30 Pac. 73); *Canfield* v. *Bostwisk,* 21 Conn. 550, 553.

5. When the legatee dies before the testator, the legacy lapses and falls into the body of the estate, and is not payable to his executor or administrator. 2 Redfield, Wills, 157; 18 Am. & Eng. Enc. Law (2d ed.), 748.

6. Since the findings of the court disclosed that Hosea Stephens, defendant's father, died long before the execution of the will or of the codicil thereto, of which plaintiffs had knowledge at the time of their payment of the money involved to defendant, and the presumption under the issues being that the common law was in force and effect in Illinois at the time of the probation of the will and of the payment to defendant of the moneys involved, the defendant was not entitled to share in the Sturtevant estate. The oversight in paying the money to her was, therefore, disclosed to be a mistake of law, and not of fact, by reason of which plaintiffs were not entitled to recover; and defendant's motion for judgment should have been allowed. But as a result of the court's action in ordering a new trial the complaint was amended, pleading the statute of Illinois, which provides that notwithstanding the devisee may die before the testator, leaving lineal descendants, such descendants shall take the estate which a person as such devisee would have done in case he had survived the testator, thereby entitling the plaintiffs, under the new issues and proofs submitted, to recover, and impairing defendant's rights accordingly.

7. We are then confronted with the question whether the court under our statute and practice has the discretionary power upon its own motion to grant or direct a new trial after having made and filed its findings. Our Code provides: "The order of proceedings on a trial by the court shall be the same as provided in trials by jury. The finding of the court upon the facts shall be deemed a verdict, and may be set aside in the same manner and for the same reasons, as far as applicable, and a new trial granted." Section 159, B. & C. Comp. And it has been held that "findings made by a court upon the facts in an action tried before it without the intervention of a jury are deemed a verdict. * *" *Reade* v. *Pacific Supply Ass'n,* 40 Or. 60, 65 (66 Pac. 443);

*Ferguson* v. *Reiger,* 43 Or. 505, 508 (73 Pac. 1040). The clear wording of the statute, as well as the interpretation thereof by the authorities last cited, make it necessary to ascertain the legal status of the parties and right of the court to adopt the course pursued, under the same rule as if the cause had been tried before a jury and a motion for judgment upon its verdict in defendant's favor were pending. Section 174 of the Code specifies the manner in which a "verdict or other decision may be set aside and a new trial granted," and expressly provides that it may be granted "on the motion of the party aggrieved." The language used appears to be very clear and explicit and is not susceptible of any other interpretation than there expressed; and in view of the well-known rule that the expression of one thing excludes another, so often applied in ascertaining the intent and purpose of legislative enactments (19 Cyc. 27), we are unable to understand by what authority the court can, upon its own motion, and without a request or suggestion from either of the contending parties, set aside its findings or verdict, and order a new trial, much less when the only purpose disclosed by the record is to permit one of the litigants to apply to the court for permission to amend a pleading.

8. In referring to this rule of construction in 19 Cyc. 26, it is announced that "whenever a statute limits a thing to be done in a particular form, it necessarily includes in itself a negative, viz., that the thing shall not be done otherwise." This principle is so fundamental and so well understood that it requires no argument to enforce it; the question being whether it applies to the acts under consideration.

9. Analogous to the case at hand is *Long* v. *Board of Commissioners,* 5 Okl. 128 (47 Pac. 1063), except in that case the order directing a new trial was made after the entry of a judgment in favor of the plaintiff; by which order the judgment was set aside and the cause

continued for the term, and plaintiff appealed. No
motion was filed in the cause by either party thereto,
nor was any application made to the court asking that
the proceedings be set aside; and, like the case at bar,
nothing appeared of record showing the grounds upon
which the order was made. The court in considering
the question calls attention to the fact that the statute
nowhere in express terms authorizes the court to set
aside the judgment upon its own motion, and that the
manner and causes for doing so are there specified, the
effect of which was to limit the court in its powers
to the manner and time there provided. Mr. Justice
TARSNEY there observes: "When the order in this cause
was made, there was no motion for a new trial pending
before the court. No such motion was ever made by
either party, nor was a new trial sought or requested
by either party at any time prior to the granting of the
order. The parties to the cause were not before the
court for any purpose. The Code affords ample facilities
for moving for a new trial, and sets out plainly what
shall be done as preliminary to the granting of such
motion. This order, we think, was clearly erroneous,
and cannot be sustained without making a precedent
which would tend to unsettle and confuse the law and
the practice regulating and granting of new trials in
the trial court; and would be extremely dangerous as
liable to be used to prejudice the substantial rights of
parties litigant." See, also *Lloyd* v. *Brinck,* 35 Tex. 1.
"A new trial," says our Code (Section 173), "is a re-
examination of an issue of fact in the same court after
a trial and decision or verdict by a court or jury." This
language would indicate that the cause is by the statute
deemed tried when the verdict or findings is filed. It
can, therefore, make no difference, so far as the principles
involved are concerned, whether the court orders a
new trial after verdict and before judgment, or after
entry of judgment; for, in the absence of a discovery

that the court has been imposed upon in some manner by fraud, or by collusion of the parties, or otherwise, or of some showing which under the statute may entitle the affected party to a new trial, the court is bound to enter judgment in accordance with the law applicable to the facts found by it. The statutes of North Dakota expressly authorize the court on its own motion to set aside a verdict and grant a new trial; and the Supreme Court of that State held it to be reversible error for the court on its own motion to vacate a verdict and grant a new trial after plaintiff had moved for judgment thereon; and, in passing upon the question, say: "The order is clearly erroneous, and cannot be sustained without making a precedent which would tend to unsettle and confuse the law and the practice regulating the granting of new trials in the court below." And, after discussing the case fully and noting that "no case is cited or known to this court · which lends the least countenance to such practice," adds: "In this State, and in the late territory, the instances of vacating verdicts and granting new trials without application of the parties have been exceedingly rare, and no such summary action should be taken except in cases falling clearly within the statute, and then the order should be made promptly on coming in of the verdict." *Gould* v. *Duluth & Dakota E. Co.,* 2 N. D. 216 (50 N. W. 969). To the same effect is the holding and observations of the court in *Clement* v. *Barnes,* 6 S. D. 483 (61 N. W. 1126); *Townley* v. *Adams,* 118 Cal. 382 (50 Pac. 550). Under the common law the court could set aside a verdict and order a new trial upon its own motion. The *King* v. *Holt,* 5 T. R. (Eng.) 436, 438; 14 Enc. Pleadings and Practice 932; *Weber* v. *Kirkendall,* 44 Neb. 766 (63 N. W. 35). And the adjudications as to the extent to which they might go in that respect were not harmonious, making a statute on the subject essential to a uniform system of practice, which was its evident purpose and

intent.   To be effective as such, it must therefore be exclusive, but it would be impossible to give effect to its terms if the courts are to be at liberty to disregard the manner of proceeding there pointed out.   It may be that the statute was not intended to change the common-law practice of permitting the court on its own motion to set aside the proceedings had before it, where it appears that it has been imposed upon in an *ex parte* proceeding or the verdict entered through improper or collusive agreements, etc., and that the court would have the power essential to its protection and that of the public under such circumstances (*State ex rel.* v. *Adams,* 84 Mo. 310, 316) ; but that question is not involved here.

10. There is nothing in the record to indicate any emergency calling for any extraordinary action on the part of the court.   The cause had been twice tried, and had been once before this court on appeal, reversed, and a new trial ordered.   There is no indication of any advantage having been taken or surprise of any kind, and, so far as appears in the record, the parties to the action were not complaining of any proceedings had, and the only object inferable from the record was to permit plaintiffs, if they chose to do so, to apply to the court for permission to amend ·the complaint.   Much discretion has been recognized in permitting amendments, but we know of no authority sustaining the court's discretion to the extent of setting aside the proceedings for the purpose of giving either party permission to apply to the court for that privilege.   Again, the .right to amend after trial is impliedly inhibited by the statute. Section 102, B. & C. Comp.  Much stronger, then, is the reason for not upholding the action of the court in setting aside a verdict and granting a new trial for that purpose.

11. It is argued by plaintiffs' counsel that defendant's motion to strike out a part of the findings gave the court jurisdiction to adopt the course pursued, for the reason

that the motion for a new trial is the only one recognized by the Code; but whether correct in that view is unnecessary to decide, for it was clearly not a motion for a new trial any more than would have been a motion to amend the verdict, as to which the courts have gone a great distance without granting a new trial. *Osborne* v. *Altschul,* 35 C. C. A. 354 (93 Fed. 381).

12. It is next insisted that defendant's remedy was by mandamus to compel the court to enter a judgment on the findings made at the second trial, and that, having answered in the third trial, she waived and abandoned her right to insist upon her motion for judgment. But, whatever may be the rule elsewhere, the course pursued is in harmony with the usual practice in this State and so recognized. Section 548, B. & C. Comp.; *Hoover* v. *King,* 43 Or. 281 (72 Pac. 880: 65 L. R. A. 790: 99 Am. St. Rep. 754) ; *Brownell* v. *Salem F. Mills Co.,* 48 Or. 525 (87 Pac. 770).

We think it clear that the method adopted by the court was without authority and prejudicial to defendant; and under the rule announced in *Pacific Lumber Co.* v. *Prescott,* 40 Or. 374, 388 (67 Pac. 207, 416), the judgment should be reversed and the cause remanded, with directions to sustain defendant's motion for judgment.